# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7023 | **DATE** | 3/11/2004 |
| **CASE TITLE** | CITY OF CHICAGO vs. FACTORY MUTUAL INSURANCE COMPANY | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
         ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: For the reasons stated above, the Court grants Factory Mutual's motion for summary judgment [docket no. 10] and denies the City's cross-motion for partial summary judgment [docket no. 18]. This case is hereby terminated. This order is final and appealable. Any pending motions or schedules are stricken as moot.

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | MAR 1 8 2004 | | 30 |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| CG | courtroom deputy's initials | U.S. DISTRICT COURT CLERK | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| CITY OF CHICAGO,<br>an Illinois Municipality, | )<br>)<br>) | **DOCKETED**<br><br>MAR 1 8 2004 |
| Plaintiff, | )<br>) |  |
| v. | )<br>)<br>) | Judge Ronald A. Guzmán |
| FACTORY MUTUAL<br>INSURANCE COMPANY,<br>a Rhode Island Corporation, | )<br>)<br>)<br>) | 02 C 7023 |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Factory Mutual Insurance Company's motion for summary judgment and Plaintiff City of Chicago's cross-motion for partial summary judgment on the question of Factory Mutual's contractual liability. For the reasons set forth below, Factory Mutual's motion is granted and the City's cross-motion is denied.

## BACKGROUND

The following facts are undisputed. Defendant Factory Mutual Insurance Company ("Factory Mutual") is a Rhode Island corporation, with its principal place of business in Johnston, Rhode Island. (Pl.'s LR 56.1(b)(3)(A) ¶ 3.) Plaintiff City of Chicago ("the City") is an Illinois municipal corporation, incorporated under the laws of the State of Illinois, with its principal place of business in Cook County, Illinois. (*Id.* ¶ 4.) At the time when it was still doing business as Allendale Mutual Insurance Company, Factory Mutual issued the City an insurance policy with a period from January 1, 1999 to January 1, 2002. (*Id.* ¶ 5.) The scheduled locations covered by the policy are Chicago

O"Hare International Airport ("O'Hare"), Meigs Field, and Chicago Midway Airport ("Midway"). (*Id.* ¶ 6.) The policy is a standard form policy, which was drafted by Factory Mutual and contains business interruption indemnification provisions. (Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) ¶ 1.)

On September 11, 2001, at 8:46 a.m. EDT, an airliner struck the World Trade Center Tower 1 in New York City. (Pl.'s LR 56.1(b)(3)(A) ¶ 11.) At approximately 9:02 a.m. EDT, a second airliner struck the World Trade Center Tower 2 in New York City. (*Id.* ¶ 12.) After these two events, at 9:08 a.m. EDT the FAA banned all takeoffs nationwide for flights going to or through the New York City airspace. (*Id.* ¶ 14.) At 9:26 a.m. EDT, the FAA banned takeoffs of all civilian aircraft regardless of destination after receiving notification of the suspected hijacking of American Flight 77. (*Id.* ¶¶ 15-16.) At 9:40 a.m. EDT, American Flight 77 struck the Pentagon in Arlington, Virginia, and five minutes later the FAA ordered all airborne aircraft to land at the nearest airport as soon as practical. (*Id.* ¶¶ 17-18.) After United Flight 93 crashed in Stony Creek Township, Pennsylvania at 10:07 a.m. EDT, the FAA issued a Notice to Airmen at 10:39 a.m. EDT that affirmed the earlier FAA order halting takeoffs and landings at all airports. (*Id.* ¶¶ 19-20.) The FAA's unprecedented ground stop order prevented airplanes from departing or arriving at airports across the United States (including O'Hare, Midway, and Meigs Field), between the dates of September 11-14, 2001. (*Id.* ¶¶ 26-29.)

Due to the interruption of business occasioned by the FAA's ground stop, the City suffered significant business income losses. (*Id.* ¶ 8.) On December 5, 2001, the City advised Factory Mutual of its potential business interruption claims. (*Id.* ¶ 7.) On March 5, 2002, Factory Mutual denied the City's claim. (*Id.* ¶ 10.)

In response to Factory Mutual's denial, on August 23, 2002, the City filed this action in Cook County, seeking coverage under the policy's Ingress/Egress and Protection and Preservation of Property coverage provisions. (Compl. ¶¶ 29, 39.) Factory Mutual then removed the case to the U.S. District Court for the Northern District of Illinois, Eastern Division. Thereafter, Factory Mutual filed a motion for summary judgment, and the City responded and filed a cross-motion for summary judgment as to Factory Mutual's contractual liability.

## DISCUSSION

Contract interpretation is particularly suited to disposition by summary judgment. *Metalex Corp. v. Uniden Corp. of Am.*, 863 F.2d 1331, 1333 (7th Cir. 1988). Under Rule 56(c), summary judgment is proper once the moving party has established that no genuine issue of material fact requiring resolution at trial can be found in the record and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing motions for summary judgment, courts must view the evidence in the light most favorable to the non-moving party, meaning that any doubt as to the existence of genuine issues of fact will be resolved against the moving party. *Valley Liquors, Inc. v. Renfield Imps., Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987). However, a party may not rest upon pleadings to oppose a motion for summary judgment and must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine only if a jury could reasonably return a verdict for the non-moving party. *Id.*

The parties agree that Illinois law governs this dispute. (Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) ¶ 2.) Under Illinois law, "[a] genuine issue of material fact exists when a

material provision of a contract contains an ambiguity requiring extrinsic evidence to resolve." *Installco Inc. v. Whiting Corp.*, 713 N.E.2d 719, 721 (Ill. App. Ct. 1999). "Whether such ambiguity exists is a question of law for the . . . court to decide; if reasonable persons could draw different inferences from the undisputed facts, summary judgment is inappropriate, and the matter should proceed to trial." *Id.*

The City is seeking to recover under the "Ingress/Egress" coverage provision or, alternatively, under the "Protection and Preservation of Property" provision contained within the property and business interruption insurance policy it holds with Factory Mutual. (Compl. ¶¶ 29, 39.) The Ingress/Egress provision states:

> This policy will cover the Actual Loss Sustained by the Insured due to the necessary interruption of the Insured's business due to prevention of ingress to or egress from the Insured's property, whether or not the premises or property of the Insured shall have been damaged, provided that such interruption must be a result of physical damage of the type insured against and not excluded by this policy, to the kind of property not excluded by this policy.

(Pl.'s Ex. A, Factory Mutual Policy FB492 ("Factory Mutual Policy") at 14.)

The crux of the dispute between the parties relates to the business interruption suffered by the City's airports during and after the events of September 11, 2001, and whether the Ingress/Egress provision insures against damages of this type. Factory Mutual argues that the sole cause of the business interruption was the FAA's mandatory ground stop order. However, the City urges consideration of the fact that the FAA's ground stop order was indirectly caused by terrorist-inflicted physical damage to the World Trade Center and the Pentagon. The City's argument hinges on the fact that other provisions in the contract limit insurable business interruptions to those which are caused

4

by "direct physical loss or damage." (Factory Mutual Policy at 6.) Therefore, the City maintains that Factory Mutual's failure to include the word "direct" in this specific provision means that the Ingress/Egress provision insures against business interruptions indirectly caused by non-excluded physical damage. However, the City's argument fails because it ignores the fact that the Ingress/Egress provision calls for the damage to be of the type "not excluded by this policy." (Factory Mutual Policy at 14.) An examination of the listed damage exclusions reveals that "indirect or remote loss or damage" is excluded by this policy. (*Id.* at 29.) Thus, although ingress to and egress from the airport were prevented by the FAA's order and were indirectly caused by terrorist-inflicted damage, this damage is one of the types of damage excluded by this policy in that it was indirect and remote damage inflicted upon the World Trade Center and the Pentagon.

Although the City urges reliance on the Eastern District of North Carolina case *Fountain Powerboat Industries, Inc. v. Reliance Insurance Co.*, that case is inapposite because it dealt with a prevention of ingress to and egress from the insured's manufacturing facilities that was caused by hurricane-related flooding. 119 F. Supp. 2d 552, 554 (E.D.N.C. 2000). The Ingress/Egress clause in that case insured against business interruptions caused by ingress and egress preventions that are the "direct result of a peril not excluded." *Id.* at 556. The court explained that hurricanes and flooding were not listed as excluded causes of damage and therefore awarded coverage to the insured. *Id.* at 557. However, the *Fountain Powerboat* case is distinguishable from the set of facts before this Court because the damage that resulted in the City's ingress/egress business interruption was of the type specifically excluded by Factory Mutual in its policy.

Furthermore, the City's argument for coverage under the Ingress/Egress provision fails in light of the final clause, which imposes a territorial limitation. Specifically, the final clause dictates that the prevention of ingress to or egress from the airports must be the result of non-excluded physical damage "to the kind of property not excluded by this policy." (Factory Mutual Policy at 14.) The kind of property covered by the policy includes real property in which the City has an insurable interest, "or within 1,000 feet" of such property. (*Id.* at 5.) Thus, because the damage that indirectly caused the ingress and egress prevention at the airports did not occur at or within 1,000 feet of the insured properties, the Court holds that the Ingress/Egress provision does not provide coverage for the damage suffered by the City. Although the City has included deposition testimony of Factory Mutual employees speculating on the possible meanings of these clauses, this extrinsic evidence is unnecessary in light of the unambiguous language used in the policy. *See Commonwealth Ins. Co. v. Stone Container Corp.*, 351 F.3d 774, 779 (7th Cir. 2003) (holding that where language of exclusion is unambiguous, extrinsic evidence is not permitted for the purposes of interpretation).

Upon careful interpretation of each clause of the Ingress/Egress policy within the context of the contract as a whole, it becomes clear that the provision insures against business interruptions due to the prevention of ingress to or egress from the City's airports, provided that the prevention is the result of direct physical damage to property that is at or within 1,000 feet of the airport premises. The included language that reads, "whether or not the premises or property of the insured shall have been damaged" presupposes a situation in which ingress and egress are prevented due to physical damage within 1,000 feet of the airport premises, but not on the premises themselves. (*See*

Factory Mutual Policy at 14.) As a result, the business interruption which was due to the ground stop imposed by the FAA in order to prevent further terrorist attacks is not an insurable event according to the terms of the Ingress/Egress provision.

More precisely, the direct cause of the business interruption suffered by the City was the FAA ground stop order, which was an order of civil authority. Under the Time Element business interruption coverage, in order to calculate the "Period of Interruption," the contract sets forth scenarios and the applicable calculation method. (Factory Mutual Policy at 6.) Under each coverage provision the contract explains the mode of calculation for an interruption caused by "an order of civil authority." (*Id.* at 9, 11-12, 14.) Further, these clauses limit the "period of interruption" for determining the loss incurred with regard to business interruptions caused by orders of civil authority to those orders that are "the direct result of physical damage of the type insured against under this policy at the described location or within 1,000 feet of it." (*Id.* at 9, 11-12, 14.) The inclusion of these limitations further defeats the City's argument that the business interruption in question is covered by the policy. *See Two Caesars Corp. v. Jefferson Ins. Co.*, 280 A.2d 305 (D.C. 1971) (construing a similar clause and noting that "though the loss alleged resulted from . . . municipal regulations, these did not prohibit access to the premises because of damage to or destruction of adjacent property").

In its complaint, the City also claims that the "Protection and Preservation of Property" coverage provision insures against the business interruption that occurred between September 11 and 14, 2001. (Factory Mutual Policy at 22.) However, this claim is unpersuasive because of the clear and unambiguous language of this provision. Specifically, this coverage is limited to business interruptions caused by temporary

actions "to prevent immediately impending physical loss or damage insured by this policy." (*Id.*) The ground stop was ultimately imposed to protect against any further terrorist attacks like those that damaged and/or destroyed the World Trade Center and the Pentagon. There is no evidence that the FAA's ground stop was in any way imposed in order to protect Midway, O'Hare, or Meigs Field from immediately impending physical loss or damage. Accordingly, this provision does not extend coverage to the City for the interruptions of September 11-14, 2001.

## CONCLUSION

For the reasons stated above, the Court grants Factory Mutual's motion for summary judgment [docket no. 10] and denies the City's cross-motion for partial summary judgment [docket no. 18]. This case is hereby terminated. This order is final and appealable.

**SO ORDERED**                                    **ENTERED:** 3/11/04

**HON. RONALD A. GUZMAN**
**United States Judge**